## HARDY vs. HUNT.

*Sixth District Court, for Sacramento Co. November,* 1857.

LIABILITY—BAILEE—AGENT—DEBTOR.

The bailee of money deposited for safe keeping by one in his own name, who had re-
ceived it from a third party for the purpose of making a bet, according to the in-
structions and for the benefit of such third party, but who was not directed by the
third party so to deposit the specific sum, with such bailee, is not liable for the same
to such third party, in an action brought by the latter to recover the amount of the
deposit.

Whether or not the bailee will be so liable, depends upon the relation of the depositor
to the third party as agent, as bailee or as debtor, which depends upon whether
or not the depositor and third party treated the money as specific property or as
currency.

If the third party, when he parts with the money, contracts for the return or re-delivery
thereof to another, the depositor is his agent, or bailee, and he retains his property
in the coin in the hands of the second bailee; but if he so contract for the equiva-
lent of the money, in any currency, he makes the depositor his debtor and parts
with his property.

The facts are fully stated in the opinion.    On trial before the court
without a jury.

*Smith & Hardy* and *Long,* for plaintiffs.

*Winans & Hyer,* for defendants.

BOTTS, J.—This is an action, charging the defendant with money had
and received to the plaintiff's use.  A jury having been waived, it
devolves upon the court to determine the facts and apply the law.

First for the facts.  On the —— day of August, 1857, the plain-
tiff gave one O'Brien a check upon B. F. Hastings, drawn payable to
O'Brien's order, for the sum of five hundred dollars, requesting O'Brien •
to bet that amount for him, the plaintiff, with one Harris, upon the ap-
proaching election for sheriff of the county of Sacramento.  O'Brien
undertook to make the bet for the plaintiff; the plaintiff charged
O'Brien to make the bet in his own name, without disclosing the plain-
tiff's connection with it.  O'Brien proceeded to the banking house of
Hastings, drew the money, and put it in his pocket, together with a

Hardy *vs.* Hunt.

small amount of his own ; he left the bank, made the bet, and returned with Harris in a few moments ; it was agreed that O'Brien and Harris should deposit with the defendant, Hunt, a clerk in the bank, one hundred dollars, each, as a forfeit, and that the other four hundred should be deposited with Hunt, as stakeholder, on the following Monday. O'Brien then deposited four hundred dollars with Hunt to be held by him as stakeholder, in the event Harris put up his four hundred on Monday. The terms of the bet were reduced to writing, made in the name of Harris, on the one part, and of O'Brien, on the other, and signed by both of them.

On the first day of September, 1857, attachments, issuing out of the justice's court of —— township, in suit against O'Brien, were served upon Hunt, under the 126th section of the practice act. By agreement between O'Brien and Harris, the latter was permitted to withdraw his five hundred dollars from the hands of Hunt. After the attachment was levied upon Hunt, he was informed by O'Brien that the bet was made by the plaintiff, and Hunt replied that he had suspected as much all along. The suits against O'Brien, in the justice's court, went to judgment, and upon " proceedings supplementary to execution," Hunt was cited before justice Jenks, by whom the judgments had been rendered. At this examination, Hardy, the plaintiff, desired to appear by counsel, but was informed by the justice that he had no standing in court. When Hunt appeared before the justice he was aware of Hardy's position. Upon a statement of the facts, Hunt was ordered to pay over, and did pay over, to the judgment creditors of O'Brien, the sum of $422 30, and the balance of the five hundred dollars he paid over to the plaintiff, without prejudice to the merits of this controversy.

The first, and, in my opinion, the only question arising upon these facts, is, does any privity exist between the plaintiff and defendant, upon which this action can be maintained ? That the principal can sue upon the contract of his agent, is indisputable, and no court in christendom has gone further to uphold this doctrine than did the supreme court, in the case of *Ruiz Hermanos* vs. *Norton.*[*] But here two things are to be remembered : First, that this doctrine rests upon the right

*4 Cal. 355.

of property in the unknown principal, which has been transferred; and, secondly, that the contract between O'Brien and Hunt was made without the knowledge or authority of the plaintiff. Had Hardy requested that the particular money, or check, that he gave O'Brien, should be deposited, in his name, with Hunt as a stakeholder; and had it been so deposited, I have no doubt this action could have been maintained. Or, had Hardy, instead of money, given O'Brien a horse, with directions to bet him on the election, and the horse had been deposited for this purpose with Hunt, even in the name of O'Brien, it is probable that the plaintiff could have maintained an action of trover for the horse; in such a case, he would recover, not by force of any contract, express or implied, but by virtue of his ownership of the property in the possession of the defendant. Very different would it have been, had he delivered the horse to O'Brien, as he did the check, to be converted into *money*, with directions to bet the money. By such a proceeding, he put into O'Brien's hands, not any specific money, which it was his duty to keep separate and apart from his own, the bailor thereby preserving his title to the specific money, but he entrusted him with money, generally, to be accounted for, which the bailee, without a breach of trust, could mingle with his own, as he did, and which he could account for, as well by the return of any other money, of a similar amount, as of the particular proceeds of the check. What was this, but making O'Brien his debtor? And how can it be said, that O'Brien was the plaintiff's agent, in respect to any particular money?

Much learning has been expended in the attempt to draw the line between general and specific deposits. The cases have arisen mostly under assignments, by bankrupt bankers. When the customer deposits specific property, to be returned in specie, so long as the property can be ascertained and traced, he will have a right to his specific property; hence, money, in a sealed bag, which can be identified, or even coin marked for the occasion, being specially deposited, never goes to the assignees as the effects of the bankrupt. The banker, in such a case, is a mere bailee, and the property remains in the bailor. On the other hand, if one deposits with a banker a sum of money, with the understanding that the banker is to account to him, not for the specific money, but for the specific sum, then does he become a creditor, and the money deposited by him an hour before, even if it were

Hardy vs. Hunt.

marked and traceable, passes to the assignees, with the general effects, and the unfortunate depositor is classed in the category of the insolvent's creditors.

It is sometimes said, that one man can have no property in money in the possession of another, because "money has no ear-marks." This is a metaphor used to distinguish a debtor from a bailee, and perhaps it is significant of the danger that would result from permitting the testimony of the bailee to establish the identity of money, uncorroborated by any peculiar marks impressed upon it. Possibly this was what Lord Mansfield alluded to, when he said, 1 *Burrows*, 457: "It has been quaintly said, that the reason why money cannot be followed, is because it has no ear-marks; but that is not true. The true reason is, on account of the currency of it."

Courts, of equity especially, have gone very far in upholding the right of property in the original owners of money, where it has been purchased by an agent, even after the money had been mingled, and intended to be mingled, with the funds of the agent or bailee; but in such case, I apprehend, the investment must have been made in the name of the principal, or by his direction. Thus, had Hardy given this money to O'Brien, for the purpose of buying a particular horse, and O'Brien, even after mingling the money with his own, had purchased the particular horse with the exact sum delivered to him, these circumstances, perhaps, would have been held sufficient to raise a trust by implication of law, and the right of property might have been recognized in the *cestui que trust*. But there is no specific property in this case at all. Hardy trusts O'Brien with money, generally, and O'Brien, after mingling this money with his own, contracts with Hunt, whereby, in a certain event, Hunt is to account to him, not for the specific money deposited, but for a similar amount. All the way through, both by Hardy and O'Brien, the money bailed is treated as currency, and not as specific property. It would never do to permit a factor or agent to mingle and separate the unmarked money of his principal at his pleasure; for, by this means, every commission-merchant might ward off an execution, by declaring that the money attached was the proceeds of the goods of A. or that the goods levied on were purchased with the money of B.

I have endeavored to show that the plaintiff and O'Brien bore to

each other the relation of creditor and debtor, and not that of principal and agent, or of bailor and bailee ; the difference being, inasmuch as money is either specific property, or currency, as the owner may choose to make it when he parts with it; if, in the delivery, he contract for the return or re-delivery to another, of the identical coin, he retains the property and makes the person to whom it is delivered his agent ; but if he contracts with the bailee for the return or delivery to another, not of the specific money but of its equivalent in any currency, he consents to part with the property, and make the bailee his debtor.   In the first case, if he can trace the money, he shall have it ; in the second, he has thrown it into the currency, and shall never reclaim it.

In this point of view, it becomes unnecessary to determine whether, as was held in the case of Ball vs. Gilbert, 12 *Metcalf*, cited by the defendant, the wager being unlawful, was absolutely void, and the deposit therefore, liable to the attachment of O'Brien's creditors ; or, whether, as contended for by the plaintiff, the title in the money, at the time of the attachment, was in the stakeholder, awaiting the happening of a contingency, which might, or might not, vest it in O'Brien.   It is true, it was urged that, if the money was not subject to the attachment of O'Brien's creditors, the plaintiff might recover, by virtue of the direction given Hunt by O'Brien, to pay the money to Hardy.   To this, it is sufficient to say, if Hunt owed O'Brien, and if the information conveyed by O'Brien to Hunt, of Hardy's claim, could be construed into an assignment of the debt, no such debt, and no such assignment, are alleged in the declaration.

Let judgment be entered for the defendant.